UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND WU | No. 18 CR 852<br><br>Chief Judge Rebecca R. Pallmeyer |

**UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO CONTINUE SURRENDER DATE**

The United States of America, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully recommends that the Court deny defendant Raymond Wu's motion to continue surrender date. Defendant should be ordered to surrender on the currently set date of September 7, 2022.

**I.    BACKGROUND**

Final judgment was entered and defendant was sentenced to a 66-month term of imprisonment on February 22, 2022. Dkt. 128. On March 30, 2022, the government returned property to defendant, including an encrypted laptop which the government had been unable to access.

Defendant moved to continue his surrender date for the first time on April 11, 2022. Dkt. 132. His conduct in this case represented a supervised release violation in his previous case, and he had not yet been sentenced for that violation. *Id.* at 2. In addition to requesting a continuance of the surrender date because the

supervised release violation hearing had delayed his assignment to a BOP facility, defendant asked in that initial motion to continue for "a little time to review what is on [the computer] to determine what, if anything, he should do." *Id.* at 3. That first motion to continue surrender was granted and defendant received a new surrender date of May 23, 2022. Dkt. 133.

On May 18, 2022, less than a week before his second surrender date, defendant moved for a second continuance of the surrender date, this time because he had tested positive for COVID-19. Dkt. 134. That motion was granted and defendant received a third surrender date of June 13, 2022. Dkt. 135.

On June 8, 2022, less than a week before his surrender date, defendant filed a third motion to continue his surrender date. Dkt. 136. Defendant stated that he was requesting the continuance so that he could review the contents of the laptop, which he had received in March. *Id.* at 3. At a June 8, 2022, hearing on the motion, the Court granted the motion to continue the surrender date, setting the current surrender date of September 7, 2022. Dkt. 138. At that hearing, the Court gave the parties a month to investigate the circumstances regarding information on the laptop, setting a status hearing for July 7, 2022. *Id.*

At the July 7, 2022, hearing, the Court summarized the situation as follows:

> As I understand it, [the government] had the computer, but they didn't have the passcode and couldn't get into it. So there is nothing in that computer that is available to the government and not available to defendant. To the contrary, it's all available to the defendant, and none of it's available to the government at this point. I have yet to hear a specific about what that content is and how it relates to Mr. Wu's situation . . . It seems to me what I ought to do at this point is reinstate a surrender date – set a surrender date. And certainly we can – given that Mr. Wu may wish to file a 2255 petition, he

2

is free to do that. And if it's appropriate, we can find a federal defender lawyer to do that – to work with him on that. I don't see a basis otherwise to take any action. There is no other motion before me besides your motion for leave to withdraw.

Attachment A, Transcript, 14.

The Court concluded, "What I understand to be the case is that we are talking about evidence that Mr. Wu has and the government doesn't have. That's not – that by itself is not a basis for us to delay proceedings here." *Id*. at 14–15. After being informed by counsel that the September surrender date had already been set, the Court replied, "Right. I think we should proceed with that surrender date." *Id*. at 15.

Defense counsel was allowed to withdraw, and present defense counsel entered his appearance on July 27, 2022. Dkt. 140. On September 1, 2022, four business days before defendant's surrender date, defendant filed the present motion, his fourth motion to continue his surrender date. Dkt. 141.

## II.  ARGUMENT

A fourth continuance of defendant's surrender date would be inappropriate. There is no pending substantive motion before the Court, and defendant has articulated no procedural vehicle for this Court to disturb the final judgment in this case. Additional time to review a computer that defendant has had for over four months would serve no purpose but to delay his surrender date. The novel allegation of a *Brady* violation in this case is meritless, and the lone document that defendant attaches to his filing does not support a conclusion that defendant's loss amount should have been lower.

3

### A. There is no substantive motion before the Court.

Fundamentally, this matter is in the same position that it was at the July 7 hearing. As addressed below, defendant's filing raises a *Brady* allegation for the first time and attaches a lone document purportedly from defendant's computer, but neither of these things change the core fact that defendant has identified no procedural vehicle for this Court to address his concerns even if those concerns were legitimate.

Even if defendant had found evidence that defendant's loss amount was miscalculated, and even if such a miscalculation amounted to clear error, the time to correct that error has passed. Fed. R. Crim. P. 35. Likewise, the time to appeal his sentence has passed. Fed. R. App. P. 4.

The Court allowed appointed new counsel "to review his circumstances and consult with him on a potential section 2255 petition." Dkt. 139. The pursuit of such a petition is not a reason to delay the start of a prison sentence, and indeed such a petition actually requires that the prisoner be in custody. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."); *see also*, *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012) ("[C]ourts do not consider the merits of § 2255 petitions filed by persons no longer in custody.").

### B. There is no *Brady* violation.

Defendant for the first time alleges that Federal Rule of Criminal Procedure 16 and *Brady v. Maryland* "required the Government to produce Mr. Wu's computer

4

to him . . . ." Dkt. 141, 1. The circumstances of the government's possession of the computer were discussed at length at the July 7 hearing. Tr. 3–8. The computer was encrypted and the government did not have access to the information on the computer. *Id.* at 4. When the Court asked Mr. Wu, as the only person who had access to and had reviewed the material at the July 7 hearing, about that material, Mr. Wu demurred:

> THE COURT: You are not able to tell us anything about the content of the computer right now that would support a different outcome here; is that right?
> THE DEFENDANT: I believe I need counsel to help me understand further what I should be doing and what was not made available to me.

*Id.* at 15.

The Court, clarified, "Sir, I think that's – for the record, we ordinarily consider what's not available to you as something in the hands of the government that they don't turn over. This is information, as I understand it, that was not available to the government . . . ." *Id.* at 15–16. Just so. There is no merit to defendant's casual *Brady* allegation in his motion to continue his surrender date.

## C. Defendant's exhibit does not prove that the loss amount was wrong.

Defendant for the first time in an exhibit to his motion purports to share information from the computer with the United States and the Court. Dkt. 141, 4–5. The exhibit purports to be an email from defendant's late girlfriend (Victim 13). *Id.* The purported email exchange references a wire transfer for $27,040 made to a communications company that defendant associates with Victim 8. *Id.* at 2. Defendant interprets this as showing that Mr. Wu actually "did invest at least

5

$27,040" on behalf of Victim 8's investments. *Id*. at 3. Defendant uses this interpretation to claim that the $1,539,513 loss amount in this case was off by $27,040. *Id*. at 2. Defendant's exhibit does not support that conclusion.

First, the Court has no ability to be assured of the authenticity of this document. As discussed at previous hearings, defendant has declined to share the computer with the government. Not only does this mean the government cannot view any documents on the computer or assess their context, it also means the government cannot conduct the type of forensic analysis that would be necessary to verify the documents' origins or if they have been altered in any way. Defendant is a twice-convicted fraudster who has routinely forged and created false documents to advance his interests. It is not apparent from defendant's motion if this document was taken from the copy of the laptop that prior defense counsel made or from the laptop itself, which is in Mr. Wu's control. There is no metadata included, and none has been shared with the government. Even if this exhibit changed defendant's loss amount on its face, the Court could simply not trust that it was authentic.

The exhibit does not change the loss amount on its face, and defendant's interpretation of the document does not lead to his desired conclusion. Defendant suggests that the document shows that he did invest money on Victim 8's behalf. *Id*. at 3. Defendant references a press release discussing Victim 8's investment in the company mentioned in the invoice. *Id*. at 2. And defendant states that defendant did not himself invest in that company. *Id*. at 3. Defendant's logic seems to be that the payment of the invoice must have been defendant directing Victim 8's

6

money to a vendor on behalf of the company that Victim 8 had invested in. Defendant therefore thinks that the loss amount should be decreased by the amount of the invoice.

There are several problems with this interpretation. First, the loss amount attributed to Victim 8 was for specific other investments, not the company referenced in the invoice or the press release. Even if this was Victim 8's money, it would appear to be money not accounted for in the original loss amount calculation. Second, and perhaps more obviously, the communication involves Victim 13, not defendant. While defendant did use Victim 13 in his fraud, it is not clear why the Court should understand a payment to a vendor on behalf of a company defendant was not himself invested in as coming from defendant. There is nothing to suggest that the payment (if it was actually made) was coming from defendant acting on behalf of Victim 8. It is also worth noting that Victim 13, at defendant's direction, was at the time stealing money from her own parents. The money could have just as easily come from them or other victims as from Victim 8. Defendant directed Ponzi payments from one victim to the "benefit" of another on several occasions. Dkt. 122, United States' Sentencing Memo, 2. The purpose of these payments was of course to continue and conceal his fraud.

Defendant has had ample time to review the computer and identify any pertinent information on it, but has only put forth this one document of questionable significance. Defendant received the computer on March 30. As the Court noted at the July 7 hearing, the information supposedly on the computer was

7

information that defendant would have been familiar with: " . . . to the extent I know what's on that computer at all, it sounds like it's financial records that relate to your business dealings. So it would seem to me that you personally would have some information about that." Tr. 16. Despite that, and despite having the computer for over four months, defendant now asks the Court for more time to go through the computer. Defendant's motion states that he has only been able to consult with counsel "in the past few weeks." Dkt. 141, 3. Present counsel entered his appearance over a month ago, and defendant does not explain why he could not review the contents of the laptop starting in March. Defendant has had more than enough time to review the laptop, and there is no good reason to continue his surrender date for a fourth time.

### III. CONCLUSION

The United States respectfully requests that the Court deny defendant's fourth motion to continue his surrender date, and order him to report to the Bureau of Prisons to begin his sentence on September 7, 2022.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: */s/ Paul Schied*
PAUL SCHIED
Assistant United States Attorney
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 697-4091

Dated: September 5, 2022

8